UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
RAMON DOMINGUEZ,

              Petitioner,

        -against-

UNITED STATES OF AMERICA,

            Respondent.
--------------------------------x

REPORT & RECOMENDATION

09 Civ. 5757 (RMB)(MHD)

05 Cr. 975 (RMB)

TO THE HONORABLE RICHARD M. BERMAN, U.S.D.J.:

     Pro se movant Ramon Dominguez seeks to vacate his 2007 judgment of conviction on a single count of conspiring to distribute, and to possess with intent to distribute, a quantity of cocaine in excess of five kilograms. After denying Dominguez's Rule 29 motion, the District Court sentenced him to a prison term of 130 months, with five years of supervised release to follow, and the Second Circuit affirmed the conviction.

     In pursuing relief at this stage, the movant asserts three grounds, all falling within the scope of the Sixth Amendment -- that he was denied the effective assistance of trial counsel because his attorney did not adequately object to the introduction of evidence of recorded incriminating statements, that his attorney also improperly failed to assert an entrapment defense, and that

testimony by a Drug Enforcement Agent and New York State Police senior investigator, who had both participated in arresting Dominguez when he and others arrived at the warehouse to conduct the robbery. Apart from this testimony, the Government introduced the tapes and transcripts of electronically recorded conversations and telephone communication between the defendant and the other participants in the planning of the heist.

Based on the Government's evidence, the jury heard -- and was free to find -- that in August 2005 Dominguez met repeatedly with two individuals to plan to steal a quantity of drugs. (Tr. at 48-52, 55-59, 132-37). The plan called for the two others to notify Dominguez of the impending arrival and location of a shipment of ten to fifteen kilograms of cocaine, so that he could arrange for his "crew" to steal the drugs. (Tr. at 133-36). During these discussions defendant repeatedly asked the other men when the drugs were arriving and how many individuals would be accompanying the shipment, so that he could get his "crew ready", and he assured his interlocutors that he "knew how to do" a robbery. (Tr. at 133-35).

On August 15, 2005, one of the persons with whom Dominguez had been planning the theft revealed the discussions to IRS Special Agent Rene Tirado. (Tr. at 48). Agent Tirado then arranged to

3

record subsequent conversations between Dominguez and the two other men during the course of which they discussed the planned robbery. At the culminating meeting, on August 30, 2005, Dominguez was told that the robbery should take place that day, and he then called a confederate named "Juan" to have him come with others to assist. (Tr. at 267; see also Tr. at 72-73, 84-85). Following that meeting, Dominguez had several recorded phone conversations during the day with the confidential sources in preparation for the robbery. (Tr. at 60; see also Tr. at 80-86). The last phone call included Special Agent Tirado, acting in his undercover capacity, who told Dominguez to go to a warehouse on 22nd Street between Tenth and Eleventh Avenues, where the drugs would be stored. (Tr. at 61-62).

Soon after, agents posted at the warehouse observed a minivan arrive at the specified location on 22nd Street. Dominguez and another man, named Juan Infante, exited the vehicle, and Dominguez pointed to the warehouse door, following which the minivan began to proceed slowly in its direction. The agents then approached to arrest the men. Infante immediately surrendered, but Dominguez fled towards Tenth Avenue, where he was stopped by the pursuing agents. (Tr. at 164-69). The men who had remained in the minivan were also arrested. (Tr. at 166).

4

After Dominguez's arrest, he was given his <u>Miranda</u> warnings and eventually made a statement to Agent Tirado in which he admitted that he and his cohorts had gone to the warehouse to steal "fifteen kilos of cocaine." (Tr. at 42-44). He also confirmed that the other men in the minivan had accompanied him to assist in the planned robbery. (Tr. at 45-46).

Dominguez testified in his own defense. He reported that he had met the first confidential source at a pool hall in July 2005, and that this man began to supply him with cocaine to meet his own personal drug needs. (Tr. at 186, 190-92). He claimed that this man told him that he worked for some drug dealers and was intending to receive a quantity of narcotics from them and then arrange to store them. (Tr. at 192-93). According to defendant, the man asked him to store the drugs on their arrival but never mentioned anything about stealing them. (Tr. at 193). In his account, on August 30, 2005 he was told to go to 96th Street to pick up the cocaine, and that he went in the company of some friends, but that these companions knew nothing about his plans regarding the cocaine, and simply accompanied him because they were going to play basketball near Riverside Drive. (Tr. at 203-04) According to Dominguez, while en route he received a phone call from the cooperating source, who told him to go to 22nd Street instead, and he claimed that he

5

arrived at that location with his friends -- despite their
basketball plans -- because they were nice enough to drive him
downtown. (Tr. at 205-07). He admitted running away when approached
by the agents at 22nd Street, but claimed that he had done so only
because he was frightened by them. (Tr. at 209).

As part of his testimony, Dominguez denied that he and his
friends had intended to steal the narcotics, and he denied having
admitted those facts when questioned by Agent Tirado. (Tr. at 193,
209-10). Rather, he asserted, he had insisted that his companions
knew nothing of his involvement with the narcotics plan. (Tr. at
210-11). He also asserted that around the time of the events in
question he was depressed over the deaths of family members and was
consuming significant amounts of cocaine, causing a personality
change. (Tr. at 185-87).

On cross-examination Dominguez repeatedly denied having made
the numerous incriminating statements reflected in the transcript
of his recorded conversations with the confidential sources and the
undercover agent. (Tr. at 222-28). These admissions included his
explicit agreement to help steal the drugs, his assurance that he
had "the people" to undertake the robbery, his description of how
he and his colleagues would jump out of a car and pretend to be

6

police officers, and his inquiry as to whether he should bring a firearm. (Id.). In disowning his own alleged prior statements, he was contradicting a stipulation into which he had entered before trial conceding the accuracy of the transcripts. (Tr. at 73; Resp. Ex. F).

The jury returned a guilty verdict on the one charge at issue. (Tr. at 360-61). Dominguez then moved for Rule 29 relief, arguing that the evidence was insufficient to show that he had conspired with anyone other than a police agent, that the court should have excluded the recordings and transcripts of his conspiratorial statements, that the Government had denied him due process by asking him bad-faith questions during cross-examination, and that the court had erred in not reminding the jury during his cross-examination that the questions posed to him were not evidence. (Resp.'s Ex. B at 11-12; App. Appx. (Resp.'s Ex. E) at A70-82). The District Court denied the motion (Resp.'s Ex. B at 12; App. Appx. at A112-26), and then sentenced Dominguez to 130 months, well below the Guideline range because the case involved a so-called reverse sting operation. (Resp. Ex. B at 13-14; App. Appx. at A127-32).

Dominguez pursued an appeal from his conviction. On that appeal he asserted three claims -- that the evidence was

insufficient to prove a conspiracy with non-governmental actors
(Resp. Ex. C at 22-26), that the trial court had erred in allowing
the prosecutor to question him about other crimes "without a proper
basis or foundation" (id. at 26-33), and that he had been denied
the protection of the Confrontation Clause when the Government was
allowed to introduce (1) recorded statements of the confidential
source and (2) testimony by Government agents concerning statements
made by an informant. (Id. at 33-41).

The Second Circuit affirmed in an unpublished decision. United
States v. Dominquez, 280 Fed. Appx. 81 (2d Cir. June 2, 2008).
Citing Dominguez's recorded statements agreeing enthusiastically to
participate in the drug robbery, as well as his phone call to his
friend "Juan" to enlist him on the day of the attempted robbery and
his post-arrest confession, the panel rejected the evidentiary-
insufficiency argument. Id. at 83.

As for the cross-examination of defendant about prior acts of
violence, the court held that Dominguez had opened the door by
testifying on direct that he had never been involved with robberies
or other violent crimes, that he had never had a gun and "was like
an innocent child", and that the Government agent had "wanted to
set up the trap for me." Id. at 83. In view of that testimony,

8

including the invocation of an entrapment defense, the court held that it was not error to have allowed the prosecutor to ask the defendant about statements that he had reportedly made to an informant that he could do a robbery and that he had previously committed a murder. Id. at 83-84.

The panel rejected both of his confrontation claims as well. As to the first -- based on the introduction of recordings of Dominguez talking with the confidential source -- the Court observed that there is no Confrontation Clause violation based on the use of recorded statements of an informant if the statements were not used to prove the truth of the informant's statements, and in this case the Court noted that they had been introduced to establish context, not to prove truth. Id. at 84. (citing, inter alia, United States v. Paulino, 445 F.3d 211 (2d Cir. 2006)). In addition, the Court noted that the Government had made the source available for testimony but defendant had chosen not to call him, thus further negating the Sixth Amendment claim. Id.

As for the last claim, pertaining to testimony by a Government agent describing statements by the confidential source and offering an opinion about the proclivity of robbery crews to pursue multiple targets of opportunity, the Court also rejected the defendant's

9

arguments. Id. at 84-85. In doing so, it observed that although a limiting instruction should have been given advising the jury that the agent's account of the statements by the confidential source were not offered for their truth, the failure to provide such an instruction when admitting those statements to rebut the entrapment defense was harmless because "of the independent evidence of Dominguez's predisposition." Id. at 85. Moreover, since the defendant had not specifically invoked the Confrontation Clause argument, the panel held that the trial court's ruling should be reviewed for plain error (at least with respect to the constitutional claim), and in view of the evidence of predisposition, the error was not "plain". Id. Finally, the Court rejected Dominguez's challenge to the receipt of the agent's opinion about the habits of robbery crews since it was not based on hearsay and was relevant to the Government's response to the entrapment defense. Id.

Following defendant's rebuff by the circuit court, he filed the current motion under section 2255, claiming that his attorney, who represented him both at trial and on appeal, had failed to provide constitutionally adequate representation.

10

ANALYSIS

Since all of the movant's claims are premised on a theory of ineffective representation, we first summarize the applicable Sixth Amendment standards and then address Dominguez's arguments.

A. General Standards

To demonstrate a denial of the effective assistance of counsel, a petitioner must show that his lawyer's performance was "so defective that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984) (internal citation omitted)). As summarized in Brown:

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

11

Id. at 79-80 (quoting Strickland, 466 U.S. at 690, 694) (internal citation omitted); accord, e.g., Smith v. Spisak, 558 U.S. ___, 130 S. Ct. 676, 685 (2010); Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009); Henry v. Poole, 409 F.3d 48, 62-64 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004).

It bears emphasis that the Strickland standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, a court weighing an ineffective-assistance claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and must "determine whether, in light of all the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; accord, e.g., Kimmelman v. Morrison, 477 U.S. 365, 386 (1986); Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001). In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

The burden of proving prejudice is equally onerous. As noted, the petitioner must demonstrate "a reasonable probability" that, but for counsel's unprofessional errors, "the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Strickland, 466 U.S. at 694) (internal citation omitted).

A court's evaluation of an appellate attorney's performance is particularly deferential. Appellate counsel is not required to raise every conceivable issue, because "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983); see also McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (noting that "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance) (quoting Strickland, 466 U.S. at 689). Thus, to establish a violation of his Sixth Amendment rights, Dominguez must demonstrate that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." McKee, 167 F.3d at 106 (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.

13

1994)); <u>accord</u> <u>Youngblood v. Brown</u>, 465 F.Supp.2d 270, 282 (S.D.N.Y. 2006); <u>Torres v. McGrath</u>, 407 F.Supp.2d 551, 560 (S.D.N.Y. 2006).

### B. <u>Assessment of the Motion</u>

#### 1. <u>Failure to Seek Suppression of Recorded Conversations</u>

In Dominguez's original papers he complained that his attorney had not challenged the introduction of recordings of his conversations, both in person and on the phone, with the confidential source and with an undercover agent. Although the precise nature of the argument that defendant would have wanted his attorney to articulate is not crystal clear, he refers to Title III, 18 U.S.C. §§ 2516(1) & 2518, apparently contending that the Government did not comply with its provisions. (Def.'s Br. at 18-21; Def.'s "Mot. in Opp'n" ("Def.'s Reply") at 3-8).

We first note that defense counsel repeatedly challenged the introduction of the recorded conversations. Thus, before jury selection she sought suppression of the tapes and transcripts, on hearsay and Confrontation Clause grounds, unless the prosecutors called the cooperating source to testify. (Tr. at 25-27). She also

14

moved for a mistrial after the prosecutor, in his opening statement, referred to the contents of the tapes. (Tr. at 26). At the court's invitation she then submitted briefing (Tr. at 29-30) and engaged in extended oral argument on these issues. (Tr. at 30-37). Although the court denied suppression, during the trial defense counsel continued to object to the introduction of the tapes and transcripts (Tr. at 72) and to testimony concerning their contents. (Tr. at 46, 48, 55, 58-59). She also moved for Rule 29 relief based in part on the trial court's admission of the tapes and transcripts. (Resp.'s Ex. B at 11-12). In short, she adequately pursued the issue throughout the trial.

As for the Title III arguments that Dominguez now proposes that counsel should have advanced, the short answer is that Title III requirements do not apply to consensually recorded conversations. 18 U.S.C. § 2511(c)(2).[1] See, e.g., United States v. Caceres, 440 U.S. 741, 749 (1979); United States v. Barone, 913 F.2d 46, 49 (2d Cir. 1990). Since all of the communications for

---

[1] The cited provision states:

   It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

15

which recordings and transcripts were offered or which were described in testimony involved at least one participant who had consented to the electronic surveillance and recording, Title III would have offered defense counsel no basis for objecting or seeking suppression.[2]

Finally, we note that the admissibility of this surveillance evidence was raised by defendant on his appeal, and the Second Circuit rejected his claim. Under the circumstances, defendants' current arguments on this set of issues, while dressed up in Sixth Amendment garb, amount to an effort to reargue these claims by way of a collateral motion. This he may not do. See, e.g., Riascos-Prado v. United States, 66 F.3d 30, 33 (2d Cir. 1995) (stating that "[s]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.") (citing cases).[3]

---

[2] At one point Dominguez appears to suggest that the transcripts were inadequate or the recordings were tampered with. (Def.'s Br. at 22). Putting to one side the absence of any evidence of such improprieties, defendant stipulated at trial to the accuracy of the transcripts. (See Resp.'s Ex. F).

[3] In any event, the holding of the circuit court also demonstrates that there was no merit to the evidentiary arguments -- both of hearsay and Confrontation Clause violations -- and hence whatever shortcomings defendant might conceive in the fervor of his attorney's argumentation, any such shortfall or error caused him no prejudice. See Dominguez, 280 Fed. Appx. at 84-85.

16

2. <u>The Failed Entrapment Defense</u>

Dominguez next attacks his lawyer's handling of the entrapment defense. His precise criticism in his main papers is obscure, since he seems to say mainly that he was denied effective assistance because the defense failed. (Def.'s Br. at 21-27).[4] Again, this argument must be rejected not only because he nowhere specifies any relevant inadequacy of counsel, but also because the Second Circuit held on his appeal that the evidence was sufficient to demonstrate both guilt, and -- of particular relevance here -- defendant's predisposition to commit the crime, and further held that the evidence introduced by the prosecutor to rebut the defense, including testimony concerning his statements of past involvement in violent crimes, was admissible.

_____

[4] At one point he seems to complain that his attorney did not invoke an entrapment defense. (<u>Id.</u> at 21). Plainly that is incorrect, since she and her client explicitly asserted the defense and the trial court instructed the jury on that defense. (Tr. at 16-17, 20-22, 280, 301-07, 344-46).

In defendant's reply he also complains that his attorney did not locate or interview witnesses who might have supported the entrapment defense. (Def.'s Reply at 12). He fails to identify who such witnesses might be, other than possibly Juan Infante (<u>see</u> pp. 20-21, <u>infra</u>), and as to Infante, apart from the fact that his belatedly-proffered affidavit contradicts defendant's trial testimony (<u>see</u> pp. 21-22, <u>infra</u>), it is not at all clear that he was even available to testify at the time.

17

3. <u>The Ineffectiveness of Counsel on Appeal</u>

Dominguez's remaining argument in his initial papers is particularly puzzling. He seems to accuse his attorney of abandoning him by not perfecting his appeal. (Def.'s Br. at 28-32). The problem with this argument is that his trial attorney also represented him on appeal and did indeed perfect it, brief it and argue it. To the extent that Dominguez may be complaining that his attorney did not include a Sixth Amendment argument accusing herself of ineffective assistance at the trial level, his argument fails since, for reasons noted, the trial record offers no basis for deeming counsel's trial-level performance constitutionally inadequate, much less for inferring prejudice resulting from any such inadequacy.[5]  The trial evidence of guilt was overwhelming,

---

[5] It also bears mention that counsel's omission of a Sixth Amendment argument on appeal did not prejudice Dominguez for an entirely different reason, apart from the meritlessness of such an hypothesized claim. Because defendant was represented on appeal by his trial attorney, he did not waive his ability to challenge the trial performance of that counsel by way of a section 2255 motion, as he is now doing. See <u>Yick Man Mui v. United States</u>, 614 F.3d 50, 57 (2d Cir. 2010) (stating that "the only barrier to raising ineffective assistance claims in a Section 2255 proceeding after raising such claims on direct appeal is the mandate rule, i.e., . . . an ineffective assistance claim adjudicated on the merits on direct appeal may not be the basis for another ineffective assistance claim in a Section 2255 proceeding.") <u>See</u> <u>also</u> <u>id.</u> at 54-55 (citing <u>Billy-Eko v. United States</u>, 8 F.3d 111, 114 (2d Cir. 1993), <u>abrogated</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Massaro v. United States</u>, 538 U.S. 500 (2003))

and nothing that counsel might have done differently would have likely influenced the result.

### 4. The Reply Arguments

In movant's lengthy reply he not only takes issue with respondent's arguments, but also seems to raise a few entirely new challenges to his conviction. We address these more or less in the order of his presentation.

At the outset of his reply, Dominguez complains that his attorney sought to persuade him to plead guilty. (Def.'s Reply at 2). He seems to infer from this alleged effort -- which ultimately failed since defendant did go to trial -- that his attorney was not prepared for trial, as purportedly illustrated by her supposed failure to object to the use of the recorded communications. (Id.). We have already addressed the falsity of this point, noting that counsel did seek suppression and repeatedly objected to the use of those recordings and the resultant transcripts. As for the

_____

(stating that the procedural bar to ineffective-assistance claims not brought on direct appeal applies "only when the defendant was represented by new appellate counsel and the record was fully developed on the ineffective assistance issue."). Hence the absence of such an argument on appellate review is immaterial in any event.

19

purported effort to pursue a guilty plea and counsel's supposed lack of preparation for trial, the argument fails for various reasons. First, it is mentioned only in the defendant's reply papers, which does not constitute a proper means of presenting a claim for the first time. See, e.g., Evangelista v. Ashcroft, 359 F.3d 145, 155 n.4 (2d Cir. 2004) (stating that "[w]e will not consider an argument raised for the first time in a reply brief.") (citing United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003)); Chavez v. United States, ___ F.Supp.2d ___, 2011 WL 497935, at *8 (S.D.N.Y. Feb. 7, 2011) (citing cases). Second, the record does not reflect any such lack of preparation. Third, insofar as Dominguez may be complaining about counsel's purported advice to plead guilty, the short answer is that he did not so plead and hence suffered no prejudice, and in any event he fails to proffer any facts to show that the advice was so misguided as to demonstrate constitutional (or any) inadequacy.[6]

Dominguez then argues that at the time of his arrest he was acting under the influence of the cocaine that he was consuming,

---

[6] Defendant is silent as to what plea terms were offered. In any event, given the strength of the Government's case and the length of prison time that defendant faced if convicted, it is not at all surprising that counsel would raise the issue of a plea with her client.

20

apparently contending that this made him more susceptible to the blandishments of the man who inveigled him into participating in the drug conspiracy. (Def.'s Reply at 2, 8-12). This appears to be in part a repetition of Dominguez's argument about entrapment. Indeed, he later asserts that in the day or two leading up to his arrest, he and his friend Juan Infante had received cocaine for their personal use from the cooperating source, a fact that he criticizes his attorney for not using at trial. (Id. at 12-13). Significantly, in support of this assertion he proffers an affidavit from Infante stating that he had observed Dominguez's "huge dependency on cocaine" and that on the day of the arrest Infante and three others had gone with Dominguez to 22nd Street because they had been promised cocaine for their own use. ("Legal Affidavit of Juan Infante," sworn to Sept. 16, 2009, at ¶¶ 1-7, 9 -- annexed to Def.'s Reply foll. p. 13).

Defendant's argument about the proof of his entrapment was, as noted, dealt with on his appeal, and we have already addressed it here. In any event, to the extent that he is pursuing a somewhat different argument in his reply about what his attorney could have shown in support of the defense, the argument fails, if for no other reason, because the proposed testimony of Infante and Dominguez's newest version directly contradict Dominguez's

testimony at trial, which was that the other men (Infante included) who had driven him down to 22nd Street knew nothing about the narcotics transaction, were originally in his company only because they had intended to play basketball uptown at Riverside Drive and had driven him down to 22nd Street (when the confidential source changed the location of the drug pick-up) only as a personal favor to Dominguez. (Tr. at 203-07).[7] Furthermore, to the extent that defendant proffers this new version of events only in his reply papers, the argument is not properly presented.

By referring to his ingestion of drugs, Dominguez may also be suggesting that his attorney should have pressed some form of diminished-capacity defense. (See Infante Aff. at ¶ 9). Since, however, he did not mention this point in his initial papers here and does not even explicitly refer to it in his reply, the claim has not been properly preserved or presented here.

-----

[7] Defendant's alteration of his version of the facts is easy to explain. At trial he was trying to demonstrate that his colleagues were not involved in the narcotics conspiracy since that would undercut the Government's case that he had conspired with one or more individuals who were neither Government agents nor acting for the Government at the time. That version having been rejected by the jury, he now seeks to demonstrate that he and the others were ensnared in the conspiracy by the Government agents catering to their drug needs.

Dominguez also makes an obscure argument that appears to say that the prosecutor posed improper questions during the trial to which counsel failed to object, and that those questions vitiated his right to a fundamentally fair trial. (Def.'s Reply at 4). Putting to one side his failure to assert this claim in his original motion papers, we note that he never identifies what questions he is referring to, thus precluding any assessment of this criticism of both his attorney and the prosecutor.[8]

Finally, Dominguez complains that his attorney should have more vigorously objected to the testimony of the undercover agent regarding statements by the confidential source concerning plans for the robbery or else should have been more assertive in arguing the point on appeal. (Def.'s Reply at 16-17). As noted, however, the testimony in question did not proffer the informant's statements for their truth, and hence their receipt did not violate the hearsay rule or the Confrontation Clause, a point already explicitly made by the Second Circuit.

---

[8] In the cited passage in the reply, Dominguez refers to questions about his "personal usage". (Id. at 4). If this is meant to refer to his drug use, it is difficult to understand why he would now criticize such questions, since he seems to believe that his alleged cocaine habit supported his entrapment defense.

23

CONCLUSION

For the reasons stated, we recommend that the motion of defendant Ramon Dominguez to vacate the judgment of conviction be denied.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Richard M. Berman, Room 650, and to the undersigned's chambers, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, NY 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).

24

DATED:   New York, New York
         February 23, 2011


                                  _____
                                  MICHAEL H. DOLINGER
                                  UNITED STATES MAGISTRATE JUDGE




Copies of the foregoing Report and Recommendation have been mailed
this date to:


Mr. Ramon Dominguez
Reg. No. 53244-054
M.V.C.C.
Unit A-1
555 I Cornell Drive
Philipsburg, Pennsylvania 16866

Jason P. W. Halperin, Esq.
Assistant United States Attorney
 for the Southern District of New York
300 Quarropas Street
Third Floor
White Plains, New York 10601


                        25